The following constitutes
the order of the court. Signed January 05, 2009

_____
Marilyn Morgan
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 04-57297-MM |
| **STANLEY DOWLING,** | Chapter 7 |
| Debtor. | **MEMORANDUM DECISION AND ORDER ON TRUSTEE'S OBJECTION TO ENHANCED HOMESTEAD EXEMPTION AND MOTION TO SURCHARGE EXEMPTION** |

## INTRODUCTION

Before the court is the trustee's objection to the enhanced homestead exemption claimed by the debtor and the trustee's motion to surcharge the debtor's homestead exemption. For the reasons that follow, the trustee's objection is overruled, the enhanced homestead exemption in the amount of $150,000 is allowed, and the exemption is surcharged in the amount of the fair market rental value of the residence.

## FACTUAL BACKGROUND

The debtor, Stanley Dowling, commenced this case by filing a voluntary petition under chapter 11 on December 1, 2004 to stop a foreclosure. At the time, he was over fifty-five years old and unmarried. Dowling conducted a sole proprietorship accounting practice from condominium office suites that he owned at 1260 41st Avenue in Capitola, California; however, his license as a certified

1

**MEMORANDUM DECISION AND ORDER ON TRUSTEE'S OBJECTION TO HOMESTEAD EXEMPTION**
Case: 04-57297   Doc# 251   Filed: 01/05/09   Entered: 01/05/09 14:38:24   Page 1 of 14

public accountant had been suspended since 2002. He also owned a residence located at 552 Bean Creek Road, Scotts Valley, California and a residential four-plex located at 622 Pine Street, Santa Cruz, California. Dowling earned income from his accounting practice and the rental of the residential apartment units and one of the office suites. His Schedule I of current income filed around the time of the petition reflects that his gross monthly business income totaled $17,305, and his gross monthly rental income totaled $6,700. His Schedule J of current expenditures reflects that he had no net income after the payment of all expenses.

Shortly after he filed the petition, Dowling claimed on his Schedule C of exemptions a $50,000 homestead exemption in his residence. Scheduled claims in the case total $1,175,662, while scheduled assets total $2,497,750. Although he had been served shortly before the petition with notice of a hearing on a motion by his former spouse to enforce a stipulated judgment for property division in their dissolution proceeding, Dowling failed to list the former spouse, Phyllis Wagner, as a creditor in the case. She filed a claim in excess of $620,916, which he disputed. Dowling also failed to list in his Schedule B of personal property that he owned 1,430 shares of Coast Bancorp stock.

Upon motion by the United States Trustee, the case was converted to one under chapter 7 on February 7, 2005 because Dowling was practicing without a license. John Richardson was appointed as the chapter 7 trustee. Sometime after the case was converted, Dowling traded in the 1,430 shares of Coast Bancorp for 1,812 shares of Greater Bay Bancorp, which had acquired Coast Bancorp. Between January and April 2006, Dowling sold all the shares of Greater Bay Bancorp, retaining the $42,926.51 in sales proceeds. When the trustee repeatedly inquired in 2007 about the disposition of the shares, Dowling concealed the sale and insisted that the shares had been sold pre-petition.

Richardson obtained court approval of the sale of the residential four-plex in May 2005. He also obtained court approval of the sale of the office suites in September 2005. After these two properties were liquidated, whether there would be sufficient funds to pay claims in full turned on whether the claim of Dowling's former spouse, Wagner, would be allowed or reduced. Believing he would realize a surplus in the case, Dowling urged the trustee not to liquidate his residence but to allow him to remain in physical possession unless it became apparent that a sale was absolutely necessary. He also requested

2

**MEMORANDUM DECISION AND ORDER ON TRUSTEE'S OBJECTION TO HOMESTEAD EXEMPTION**
Case: 04-57297   Doc# 251   Filed: 01/05/09   Entered: 01/05/09 14:38:24   Page 2 of 14

a $20,000 advance by the trustee from non-exempt assets to be credited against his claimed homestead exemption of $50,000.

As a condition to paying the advance, the trustee required that Dowling first file his tax return for 2004 in order to determine the amount of priority tax claims. He also required that Dowling maintain the status quo on the residence for the benefit of the estate by paying its expenses, including the mortgage, property taxes and insurance, from sources outside the estate. Dowling agreed to do so.

In December 2005, Dowling filed his 2004 income tax return, offsetting all losses against income. He reported an adjusted gross income of negative $384,278, which included a substantial net operating loss and depreciation. Based on gross business receipts of $143,065 and business expenses of $198,057, he reported a net loss of $54,992, before deducting depreciation, in connection with his accounting practice. Based on gross rental receipts of $97,375 and rental expenses of $116,714, Dowling also reported a net loss of $19,339, before deducting depreciation, in connection with his rental properties. Although his 2004 tax return showed a substantial loss for that year, Dowling did not assert a right to the enhanced homestead exemption at that time.

Dowling and Wagner agreed that her claim would be liquidated in family court. The trustee, Dowling, and Wagner entered into a stipulation for relief from the automatic stay so Wagner could proceed in family court. In the stipulation, Dowling acknowledged that he was entitled to a $50,000 homestead exemption in his residence. The stipulation further provided that the trustee would advance $20,000 to Dowling as an offset against his homestead exemption to finance the claims litigation against his former spouse. Wagner would be entitled to an allowed claim in the amount as determined by the family court. Finally, Dowling waived any appeal of the family court's decision as well as any objection to a sale of the residence if it later became necessary in order to pay all claims in full. The court approved the stipulation on March 29, 2006.

In June 2006, the trustee learned that Dowling was delinquent on the post-petition residential mortgage payments in violation of the terms of their agreement. Dowling had missed seven post-petition payments. He explains that he has been unable to work full time since February 2005 in part because of poor physical and mental health that required him to take pain medication and antidepressants. The delinquency on the mortgage, real property taxes, and homeowners' association

3

**MEMORANDUM DECISION AND ORDER ON TRUSTEE'S OBJECTION TO HOMESTEAD EXEMPTION**
Case: 04-57297    Doc# 251    Filed: 01/05/09    Entered: 01/05/09 14:38:24    Page 3 of 14

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

dues totaled $31,445.47. After the secured creditor filed a motion for relief from the automatic stay, the trustee, the secured creditor, and the debtor agreed that the trustee would commence making the mortgage payments in October 2006 as further advances on the balance of the debtor's $50,000 homestead exemption. The trustee listed the residence for sale and obtained court approval of a sale in November 2007. From October 2006 through the close of sale in November 2007, the trustee advanced an additional $29,250 to the secured lender from the debtor's homestead exemption, nearly exhausting the $50,000 exemption.

On July 5, 2007, the family court liquidated Wagner's claim by awarding to her a judgment in the amount of $200,000, plus attorneys' fees and costs of $7,327. Almost immediately thereafter, on July 10, 2007, Dowling filed an amended Schedule C increasing his claimed homestead exemption from $50,000 to $150,000, asserting for the first time that he is entitled to the enhanced homestead exemption in California Code of Civil Procedure § 704.730(a) because his gross annual income did not exceed $15,000. The debtor's and his counsel's declarations indicate that they had not previously explored the possibility that his annual income did not exceed $15,000. Deducting his business expenses and the operating expenses of his rental properties from the gross income of the business and the gross rents, Dowling's net income for the twelve month period preceding the petition date was actually a loss of $58,450.58. His declaration further shows that his annual income for the 2004 calendar year was a net loss of $65,435.

The trustee objects to this claim of an enhanced exemption.

## CONTENTIONS OF THE PARTIES

The trustee contends that the debtor is not entitled to the enhanced homestead exemption under California law. He asserts that the debtor's Schedules I and J are a better reflection than the debtor's tax return of actual income, showing an estimated average monthly net income of $3,627 from his accounting practice and $2,550 from his rental properties. Combined, the debtor's annual income of $74,124 far exceeds the statutory threshold of $15,000 to qualify for the enhanced homestead exemption. Relying on a provision in the Family Code, Richardson asserts that although the debtor may deduct business expenses, he should not be entitled to deduct the operating expenses of his rental

4

properties in his calculation of gross annual income for homestead purposes. He argues that it would be too broad an interpretation of gross annual income to permit the debtor to deduct depreciation and a net operating loss carry-forward. Richardson further submits that the proximity in time of Dowling's amendment of exemptions to the family court judgment by his former spouse constitutes evidence of a bad faith delay of over two years before asserting the enhanced exemption, intended to hinder a full payment to creditors. He asserts that this bad faith is an alternate basis to deny allowance of the enhanced exemption.

The trustee further requests authority to surcharge the debtor's enhanced homestead exemption, if allowed, in the amount of $42,926.51, plus $4,500 in attorneys' fees, based on the debtor's inequitable conduct of misappropriating and then concealing the post-petition transfer of shares of bank stock. Richardson further seeks to surcharge the homestead exemption an additional $31,445.47 to compensate the estate for the diminution and erosion in equity caused by the debtor's failure to honor his agreement to pay the post-petition expenses of the residence. He contends that the economic loss to the estate could have been mitigated had Dowling simply acknowledged his inability to perform under the parties' agreement.

Dowling submits that the amounts set forth in his Schedules I and J merely reflect optimistic projections of future income. He asserts that his tax returns are a better indicator than his schedules of his actual income for the twelve month period immediately preceding the petition. His expenses for that period exceeded his gross income, and his declaration reflects a loss of $58,450.58 during that period or $65,435 for the calendar year. These figures do not include deductions for depreciation or a net operating loss carry-forward. Dowling contends that by analogy to income from a business, the operating expenses of his rental properties should be deducted from gross rents to determine his gross annual income for homestead purposes. Since his net income did not exceed $15,000, Dowling asserts that he is entitled to an enhanced homestead exemption of $150,000. He disputes that he has asserted the enhanced homestead exemption in bad faith.

Dowling does not dispute a surcharge of his homestead exemption to the extent of the value of the misappropriated bank shares. He does, however, dispute the requested surcharge in connection with his failure to make the post-petition mortgage payments and real property taxes. He asserts that he

5

**MEMORANDUM DECISION AND ORDER ON TRUSTEE'S OBJECTION TO HOMESTEAD EXEMPTION**
Case: 04-57297    Doc# 251    Filed: 01/05/09    Entered: 01/05/09 14:38:24    Page 5 of 14

failed to make the agreed payments because of his inability to earn sufficient income. The failure was not the result of any abuse, fraud, or other intentional wrongdoing on his part, he submits. Dowling adds that this case wound up insolvent as a matter of circumstances and not as a result of any misconduct or intention to mislead on his part.

## LEGAL DISCUSSION

**A. Dowling is Entitled to the Enhanced Homestead Exemption.**

**1. Operating Expenses May Be Deducted From Rental Income.**

The facts are largely undisputed, except that the trustee and the debtor dispute the debtor's motivations for asserting the enhanced exemption over two years after the petition was filed. The parties also do not dispute that under In re Shelley, 184 B.R. 356 (B.A.P. 9th Cir. 1995), aff'd, 109 F.3d 639 (9th Cir. 1997), a debtor may offset business expenses against the income from a sole business proprietorship. At issue is whether the operating expenses of the debtor's rental properties may be deducted from gross rental receipts to calculate the debtor's gross annual income for purposes of qualifying for the enhanced homestead exemption of California Code of Civil Procedure § 704.730(a)(3)(C).

The validity of the debtor's claimed exemptions is controlled by applicable state law. In re Been, 153 F.3d 1034, 1036 (9th Cir. 1998). California Code of Civil Procedure § 704.730(a) provides in pertinent part:

> (a) The amount of the homestead exemption is one of the following:
>
> > (1) Fifty thousand dollars ($50,000) unless the judgment debtor or spouse of the judgment debtor who resides in the homestead is a person described in paragraph (2) or (3).
>
> \* \* \*
>
> > (3) One hundred fifty thousand dollars ($150,000) if the judgment debtor who resides in the homestead is at the time of the attempted sale of the homestead . . .
> >
> > > (C) A person 55 years of age or older with a gross annual income of not more than fifteen thousand dollars ($15,000) or, if the judgment debtor is married, a gross annual income, including, the gross annual income of the judgment debtor's spouse, of not more than twenty thousand dollars ($20,000) and the sale is an involuntary sale.

6

Cal. C.C.P. § 704.730(a) (West 1987 & Supp. 2009).

As the parties have noted, the statute itself does not define what constitutes "gross annual income," and no decision by a California court has directly addressed how to determine gross annual income for purposes of qualifying for the enhanced homestead exemption. The only decisions interpreting the phrase are federal court decisions in the bankruptcy context, which the trustee has cited. In <u>In re Shelley</u>, the analysis of gross annual income by the Bankruptcy Appellate Panel for the Ninth Circuit was limited to the income from a sole business proprietorship. However, <u>Shelley</u> did not address what constitutes gross annual income with respect to rental income.

While it did not specifically address rents, <u>Shelley</u> did impart general principles that are instructive in interpreting the meaning of gross income. The term is to be flexibly construed in view of the context of the subject matter, and its meaning may adapt to varying circumstances, including the substance of the transaction and the practical realities of the business. <u>Shelley</u>, 184 B.R. at 359.

Where there is no controlling state court authority, I may examine how California courts would rule on the question. <u>Shelley</u>, 184 B.R. at 358. A statute cannot be read in isolation but must be construed in the context of the statutory framework as a whole. <u>Asfaw v. Woldberhan</u>, 147 Cal. App. 4th 1407, 1421 (Cal. Ct. App. (2nd Dist.) 2007)(statutes in one code may be considered with those in another code). One source is the Family Code, to which the court in <u>Shelley</u> looked for guidance. Section 4058(a) of the Family Code defines "annual gross income" for purposes of awarding child support, as follows:

> (a) The annual gross income of each parent means income from whatever source derived . . . and includes, but is not limited to, the following:
>
> (1) Income such as commissions, salaries, royalties, wages, bonuses, ***rents***, dividends, pensions, interest, trust income, annuities, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, social security benefits, and spousal support actually received from a person not a party to the proceeding to establish a child support order under this article.
>
> (2) Income from the proprietorship of a business, such as gross receipts from the business ***reduced by expenditures required for the operation of the business***. . . .

Cal. Fam. Code § 4058(a)(emphasis added).

7

The Court of Appeal for the Second District recently considered whether depreciation from a parent's rental properties was properly deductible from annual gross income in calculating child support. Asfaw v. Woldberhan, 147 Cal. App. 4th 1407 (Cal. Ct. App. (2nd Dist.) 2007). The Court examined *de novo* whether depreciation of rental properties constitutes an "expenditure[ ] required for the operation of the business" under § 4058(a)(2). Whether the other operating expenses of the rental properties were properly deductible was not at issue in the appeal. Significantly, however, and relevant to the trustee's assertion that expenses cannot be excluded from income other than from a sole proprietorship business, the Asfaw Court presumed that operating expenses are deductible from the income of any business, including those sources of income set forth in § 4058(a)(1), such as rents.

The Court in Asfaw observed carefully the language in § 4058 allowing for the reduction of business income for "expenditures required for the operation of the business." It reasoned that an expenditure involves paying out cash, while an expense constitutes the cost of doing business whether an actual payment of money is involved. Asfaw, 147 Cal. App. 4th at 1420. An expenditure reduces the amount of funds available for the payment of support while the same is not necessarily true of an expense. Id. at 1420. The Court noted that depreciating an asset does not reduce the cash available to pay child support nor is it required for the operation of a business. It concluded that the "expenditures required for the operation of the business" means those "ordinary and necessary business expenditures directly related to or associated with the active, day-to-day conduct of a business." Id. at 1425. On that basis, it disallowed the reduction of annual gross income by depreciation. Under this analysis, however, the expenses of a rental property, such as interest payments, maintenance, management fees, and property taxes, clearly would be deductible from gross rental receipts to derive annual gross income as they constitute expenditures that actually reduce the funds available for support payments. This reading comports with the common law definition of "income," which is the gain or recurrent benefit derived from labor, business, or property or from any other investment of capital. In re Marriage of Rothrock, 159 Cal. App. 4th 223, 230-31 (Cal. Ct. App. (2nd Dist.) 2008)(*citing* In re Marriage of Scheppers, 86 Cal. App. 4th 646, 650 (Cal. Ct. App. (4th Dist.) 2001).

In addition to the California Family Code, another source of guidance to determine gross annual income is the Internal Revenue Code. In fact, the definition of annual gross income in Family Code § 4058 is derived from "gross income" in the Internal Revenue Code. Rothrock, 159 Cal. App. 4th at 231. The Internal Revenue Code distinguishes between "gross income" and "gross receipts." See Max Sobel Wholesale Liquors v. Commissioner of Internal Revenue, 630 F.2d 670, 671 (9th Cir. 1980). Gross income is defined as all income from whatever source derived, including rents. 26 U.S.C. § 61. However, it is determined by subtracting from gross receipts all exclusions from income, or "above the line" items. Id.; 26 U.S.C. §§ 61- 62. The exclusions from adjusted gross income include all the ordinary and necessary expenses paid or incurred for the management, conservation, or maintenance of property held for the production of income. §§ 62(a)(4); 212. Exclusions from income are distinct from deductions, or "below the line" items, which are subtracted from gross income to derive taxable income. Max Sobel Wholesale Liquors, 630 F.2d at 671; § 63.

That the expenses of a rental property are excluded from gross income is confirmed by an examination of the caselaw dealing with income from rents. In Commissioner of Internal Revenue v. Yaeger, 361 F.2d 417 (9th Cir. 1966), the Ninth Circuit addressed the tax treatment of rental income to two former partners upon dissolution of their partnership. The partners owned several real properties jointly. Upon dissolution of the partnership, some of the properties were liquidated to pay the debt on the other properties, which were conveyed to one partner with an assignment to the other partner of a life estate in an undivided one-half interest in the properties retained. At issue was whether the stream of rental income should be treated as ordinary income or as a long-term capital gain from the liquidation of property. The Ninth Circuit held that only the *net* rentals generated by the properties are included in gross income. Yaeger, 361 F.2d at 421.

The Supreme Court definition of income in the tax context is also instructive. Income is defined as "undeniable accessions to wealth, clearly realized, and over which the taxpayers have complete dominion." Commissioner of Internal Revenue v. Glenshaw Glass Co., 348 U.S 426, 431 (1955). This definition is similar to the common law definition of income as the gain or recurrent benefit from labor, business, property, or investment of capital. Rental income that is diverted to the actual payment of the

9

expenses of the property does not constitute a realized accession to wealth that increases the income available to the taxpayer.

While federal tax law is not conclusive on the interpretation of Family Code § 4058, it is persuasive. Rothrock, 159 Cal. App. 4th at 231. However, "gross annual income" for purposes of determining entitlement to the homestead exemption is not simply the same as "adjusted gross income" under the Internal Revenue Code. As suggested in Shelley, gross income must be determined on a case by case basis depending on the particular circumstances. Viewing income as a gain or accession to wealth, the operating expenses of rental properties should be excluded from gross income for purposes of calculating child support under Family Code § 4058 because they are not available to the parent for support payments. Similarly, the expenses paid from gross receipts actually reduce funds available to the debtor. Based on the guidance from the California Family Code, the Internal Revenue Code, and because less funds are actually available to the debtor, the operating expenses of the rental properties should be deducted from the debtor's gross rental receipts to determine "gross annual income" for homestead purposes under Cal. C.C.P. § 704.730(a).

Turning now to the calculation of "gross annual income," the Ninth Circuit has held that "gross annual income" means the income in the calendar year in which the bankruptcy petition was filed, not the income during the twelve-month period immediately preceding the filing of the petition. In re Goldman, 70 F.3d 1028, 1029 (9th Cir. 1995). Gross income, as stated on a tax return, is presumptively correct since the returns are enforced by criminal penalties. In re Marriage of Loh, 93 Cal. App. 4th 325, (Cal. Ct. App. (4th Dist.) 2001). For that reason, I will rely on the statement of gross income set forth in the debtor's 2004 tax return. The return and the debtor's declaration show a loss of $54,992 from his accounting business in the calendar year 2004. He also realized a loss of $19,339 in connection with his rental properties that same year. Because his gross annual income for calendar year 2004 did not exceed $15,000, Dowling is entitled to the enhanced homestead exemption available under Cal. C.C.P. § 704.730(a)(3)(C).

This construction is further informed by the policy underlying the California exemption statute. Cal. C.C.P. § 704.730(a)(3)(C) was added in 1988 to increase the amount of the exemption for persons

10

**MEMORANDUM DECISION AND ORDER ON TRUSTEE'S OBJECTION TO HOMESTEAD EXEMPTION**

fifty-five years or older whose gross annual income is not more than $15,000, or if married, not more than $20,000. 1988 Cal. Legis. Serv. 1168 (West 2008). The group defined by these limitations would generally consist of senior citizens with modest incomes. Shelley, 184 B.R. at 362. Shelley points out that the comments to the 1988 amendment in the 1987-88 California Legislative State Assembly File Analysis sets forth the legislative history: "The laws exempting a judgment debtor's dwelling from execution are founded upon the public policy that the welfare of the state is best promoted by preserving a home where a person may be sheltered and live beyond the reach of economic misfortune." There is also a strong policy underlying both California law and federal bankruptcy law to interpret exemptions liberally in favor of the debtor. In re Arrol, 170 F.3d 934, 937 (9th Cir. 1999); In re Glass, 164 B.R. 759, 764 (BAP 9th Cir. 1994), aff'd, 60 F.3d 565 (9th Cir. 1995).

**2. The Debtor Has Not Exhibited Bad Faith in Asserting the Enhanced Homestead Exemption.**

A debtor may amend the schedules as a matter of course at any time before the case is closed. FED. R. BANKR. P. 1009(a). The Ninth Circuit recognizes a policy of liberally allowing debtors to amend their exemption claims in order to enhance the fresh start. In re Michael, 163 F.3d 526, 529 (9th Cir. 1998). I have no discretion to disallow an amended exemption unless the amendment was made in bad faith or causes prejudice. In re Arnold, 252 B.R. 778, 784 (B.A.P. 9th Cir. 2000). Richardson has not alleged any prejudice.

The typical case of bad faith amendment involves the debtor's attempt to hide an asset by omitting it from the schedules, then amending the schedules if the asset is later discovered. Id. at 785. This case does not fall within that pattern. I would not anticipate that a layperson, even if sophisticated, would necessarily be aware of the amount of the homestead exemption to which he is entitled. Counsel's declaration sets forth that he had not considered the possibility that his client's annual income did not exceed $15,000 until shortly before the debtor amended his exemption schedule to claim the enhanced homestead. Consequently, counsel did not advise his client earlier that he may qualify for the enhancement. By itself, claiming an exemption late is simply not bad faith. Id. at 786.

Further, Dowling's acknowledgment in the stipulation with Richardson and Wagner for relief from stay that he is entitled to a $50,000 homestead exemption does not, absent an express provision, constitute a waiver of any greater exemption to which he may later learn that he is entitled. Moreover, that he is entitled to the enhanced homestead dictates in favor of a finding that it was not asserted in bad faith. As the objecting party, the trustee bears the burden of proof that the exemption is not properly claimed. FED. R. BANKR. P. 4003(c). The trustee has not met his burden. The debtor's claim of an enhanced exemption under Cal. C.C.P. § 704.730(a)(3)(C) is allowed.

**B. The Estate is Entitled to Surcharge the Debtor's Homestead Exemption to the Limited Extent of the Fair Market Rental Value of the Residence.**

Surcharging a debtor's exemption is an equitable remedy that bankruptcy courts may apply in exceptional circumstances to ensure that a debtor exempts an amount no greater than what is permitted while protecting creditors' interests in the excess. In re Latman, 366 F.3d 774, 786 (9th Cir. 2004). The purpose served by surcharge is fairness to creditors, not punishment of the debtor. See id. at 783. Dowling concedes that a surcharge of his enhanced homestead exemption for the value of the misappropriated bank shares and associated attorneys' fees is appropriate.

With respect to the diminution in value of the residence, I find that a surcharge of the enhanced homestead is appropriate, but only to the limited extent of the fair market rental value of the residence for the period during which the debtor retained physical possession. The record does not support a finding that the debtor intentionally acted fraudulently or otherwise inequitably. He merely defaulted on the terms of the stipulation to maintain the status quo of the residence because of his inability to earn sufficient income. However, because creditors suffered an economic loss as a result of the debtor's default, it is appropriate to surcharge the debtor's homestead exemption to the extent of the fair market rental value of the residence for the time the debtor retained possession. The trustee and the debtor are directed to meet and confer to determine the appropriate amount of the surcharge and to submit an appropriate order. If the parties fail to reach an agreement, the matter may be restored to calendar.

## CONCLUSION

For the reasons stated, the trustee's objection is overruled, and the debtor's claim to an enhanced homestead exemption under Cal. C.C.P. § 704.730(a)(3)C) is allowed. Further, the debtor's enhanced homestead exemption is surcharged to the limited extent of the fair market rental value of the residence for the period that the debtor remained in physical possession.

Good cause appearing, **IT IS SO ORDERED.**

**\* \* \* END OF ORDER \* \* \***

Case. No. 04-57297-MM

**<u>SERVICE LIST</u>**

CHARLES P MAHER
LUCE FORWARD HAMILTON & SCRIPPS LLP
121 SPEAR ST SUITE 200
SAN FRANCISCO CA 94105-1582

MICHAEL K MEHR
LAW OFFICE OF MICHAEL K MEHR
100 DOYLE ST SUITE A
SANTA CRUZ CA 95062

14

**MEMORANDUM DECISION AND ORDER ON TRUSTEE'S OBJECTION TO HOMESTEAD EXEMPTION**
Case: 04-57297   Doc# 251   Filed: 01/05/09   Entered: 01/05/09 14:38:24   Page 14 of 14